IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW JACOB HELMUELLER,
A/K/A SOVEREIGNTY J. SOVEREIGN,

                Plaintiff,

v.

JARED MCLAIN, CRAIG YEHLIK,
and MCKENZIE HAZEN,

                Defendants.

OPINION and ORDER

21-cv-369-jdp

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, who formerly went by the name Andrew Jacob Helmueller in previous cases filed in this court, is incarcerated at Waupun Correctional Institution. I granted Helmueller leave to proceed on claims that defendant New Richmond Police Department officers used excessive force against him when they arrested him outside a grocery store. I initially allowed Helmueller to proceed against defendant Officer Jarred McLain, who has filed a motion for summary judgment. Dkt. 60. Helmueller filed a second case about the incident in which he sued defendants Police Chief Craig Yehlik and Officer McKenzie Hazen; I granted him leave to proceed on excessive force claims against Yehlik and Hazen and joined those claims in this case. Dkt. 84. Yehlik and Hazen followed with their own motion for summary judgment. Dkt. 93.

For the reasons stated below I will grant both motions for summary judgment and dismiss the case.

PRELIMINARY MATTERS

Before addressing defendants' motions for summary judgment, I begin with some preliminary matters.

Helmueller has renewed his motion to have the court find that defendant McLain admitted all of his requests for admissions because Helmueller received McLain's responses five days late. Dkt. 82. Judge Crabb (who previously presided over this case) denied Helmueller's request, stating that it appeared that McLain had served his responses within the 30-day deadline but that in any event Helmueller failed to show that he was prejudiced by such a short delay. Dkt. 73, at 2. Helmueller seeks reconsideration of that decision. But I agree with Judge Crabb's analysis and see no reason to reconsider. I will deny Helmueller's motion.

Helmueller argues that defendant McLain filed his summary judgment motion after the court's deadline for doing so. But the court granted the parties an extension of time to file dispositive motions, Dkt. 49, and McLain filed his summary judgment motion by that deadline. I turn now to consider that motion along with defendants Yehlik and Hazen's motion for summary judgment.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman is currently incarcerated at Waupun Correctional Institution. This case involves events occurring before his incarceration.

On October 8, 2019, Helmueller went to the Family Fresh grocery store in New Richmond, Wisconsin, along with a friend, Richard Rose. Rose went into the store and

Helmueller stayed outside. But Rose quickly came back out, along with an acquaintance named Tamara Constant. Constant was stopped by a male store manager, who believed that she had shoplifted something from the store. Constant said that she had not shoplifted.

Helmueller and Rose argued with the manager; Helmueller says that he told the manager to "take this to Customer Service" and to get his hands out of Constant's cart. Dkt. 59 at 33. Helmueller states that he didn't know if the man was actually the manager; he wasn't wearing any clothing that identified him as a store employee.

The manager took Constant into the store; Helmueller and Rose followed. Helmueller says that he was trying to assist Constant and that he asked an employee whether the man who said he was the manager actually was the manager. The manager told Helmueller that he had to buy something or leave the store; Helmueller turned to buy a pack of cigarettes. Helmueller overheard an employee calling the police. Helmueller states that he said, "Go ahead, call the cops." *Id.* at 79. In his deposition, Helmueller stated, "Because at that point, I believe that the cops are maybe necessary because everybody sounded very off. When [the manager] would not tell me his name, something sounded wrong." *Id.* Helmueller's credit card didn't work, and he left the store.

A store employee called 911 to report a woman shoplifting and a man threatening employees, being "obnoxious" and "getting violent." *See* Dkt. 63 (affidavit attaching Exhibit 3, audio of 911 call). The employee's description of the man matched Helmueller's appearance. Helmueller denies threatening anyone.

Defendant New Richmond Police Chief Craig Yehlik was the first defendant to arrive at the store. A store employee pointed to Helmueller and told Yehlik that he was involved in the disturbance. Yehlik escorted Constant out of the store, stopping just outside of its entrance,

3

and questioned Constant. Defendant Officer Jarred McLain arrived next. Yehlik motioned to McLain that he should detain Helmueller.

As Helmueller walked out of the store, defendant McLain approached him from the parking lot. McLain stopped Helmueller and told him that he was being detained for an investigation of a retail theft. Helmueller states that McLain did not tell him that he had to stay there. They talked for about a minute and a half.

During that time, defendant Officer McKenzie Hazen arrived. Hazen's squad vehicle picked up audio from the tail end of that conversation. *See* Dkt. 63 (affidavit attaching Exhibit 2, audio and video from defendant Hazen's squad vehicle; only the audio is helpful). Helmueller stated that he went into customer service to try to resolve the problem with Constant. Helmueller also told McLain, "Do you comprehend what I am telling you?" *Id.* Hazen said, "You don't need to give us an attitude." *Id*. Helmueller said that he wasn't. Helmueller asked McLain whether he was the police chief. McLain said he wasn't. The officers said Yehlik was. Helmueller said, "Then I'm talking to the wrong person." *Id.*

Store security video footage shows what happened next. *See* Dkt. 63 (affidavit attaching Exhibit 3, store video footage, starting at 06:15). Helmueller started to move toward Yehlik. McLain stepped forward, extended his right arm, and placed his hand on Helmueller's chest, to stop him from going to Yehlik. Helmueller responded by swinging his left arm up to McLain's neck and drawing back his right arm with at least a partially clenched fist. Hazen's audio captures either Helmueller or McLain saying, "Get your fucking hands off me." McLain pushed Helmueller's arm off his neck and pushed his left arm into Helmueller. Helmueller and McLain grabbed each other.

4

McLain and Hazen pushed Helmueller toward an exterior wall of the store, out of the range of the security camera for a moment. McLain says that the point of this maneuver was to perform a "vertical stun" on Helmueller to subdue him. Helmueller says that he isn't sure whether he actually was pushed all the way into the wall.

Yehlik came over to assist McLain and Hazen. Back on camera, McLain and Yehlik tackled Helmueller to the ground. All three officers moved Helmueller onto his stomach. The officers say that Helmueller "passively resisted" their attempts to handcuff him; Helmueller denies this. Once on the ground, Officer McLain straddled Helmueller to hold him in place. After Helmueller was handcuffed, he was placed on his side so he could be searched. Yehlik and McLain pulled Helmueller to a standing position while Hazen searched Constant. McLain checked Helmueller's handcuffs and loosened them. McLain placed Helmueller in a squad car.

Helmueller was charged with battery or threat to a law enforcement officer, resisting or obstructing an officer, criminal damage to property, disorderly conduct, and operating a vehicle with a revoked license, all with repeat-offender modifiers. *See* St. Croix County Case No. 2019CF637. Those charges were all dismissed at Helmueller's April 1, 2022 sentencing in another case for reckless homicide and other crimes.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

I granted Helmueller leave to proceed on excessive force claims against defendants McLain, Yehlik, and Hazen under the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. A police officer's use of force during an arrest is judged under this standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The court

must consider the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The court must consider the officer's actions under the particular facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

### A. Defendant McLain

I'll start with Helmueller's claim against defendant McLain. Defendants seek summary judgment on this claim on two grounds. First, they argue that the undisputed facts show that no reasonable jury could find that McLain used excessive force. Second, they argue that McLain is entitled to qualified immunity. Under that doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). Law is clearly established on an excessive force claim if: (1) there is a "closely analogous case" holding that the specific type of force used by the defendant is excessive; or (2) "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question." *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021) (internal quotation marks and alterations omitted).

"'[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations . . . .'" *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020) (quoting *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010)). But a court "may consider reasonableness as a matter of law when there are sufficient undisputed material facts to draw

a conclusion." *Siler*, 957 F.3d at 759. The material facts are undisputed here, largely because there is video footage of the incident.

There are multiple stages to Helmueller's claim against McLain. In his complaint, Helmueller alleges that McLain "shoved [him] in the chest." Dkt. 1, at 4. The store security video shows otherwise: McLain placed his hand on Helmueller chest to stop him from leaving the conversation and going over to speak with Chief Yehlik instead. Helmueller was not under arrest at this point and the parties dispute whether Helmueller knew that he has being detained by McLain at this point, but the hand on Helmueller's chest was clearly not excessive force. Helmueller noted in his deposition: "I recall the shove being a little bit more violent than I'm seeing in the video." Dkt. 59 at 43.

Helmueller perhaps has a point that McLain needlessly provoked him by touching him. But the fact that McLain initiated physical contact by placing his hand on Helmueller's chest doesn't mean that McLain violated the Fourth Amendment: the court of appeals has rejected the view that a use of force is unreasonable simply because an officer's earlier mistakes helped create a situation that required a use of force. *See Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 698 (7th Cir. 2020) ("The officers might have made mistakes, and those mistakes might have provoked [the decedent's] violent resistance. Even if so, however, it does not follow that their actions violated the Fourth Amendment."). So McLain didn't automatically violate the Fourth Amendment by initiating physical contact with Helmueller, even if that touched off events that spiraled out of control.

Helmueller did not think that it was appropriate for McLain to touch him, and he responded aggressively. Helmueller says that he had previously been assaulted by police and, "After what I went through with officers assaulting me in my past, I feared for my life."

7

*Id.* at 46. Helmueller struck at McLain with his left arm while bringing his right arm back with what Helmueller calls a partially closed fist, which led to McLain wrestling with Helmueller, pushing him toward the wall of the store, and tackling him.

Helmueller calls his actions "defensive" and suggests that McLain should have taken other, non-violent actions to arrest him, like simply telling him that he was under arrest, telling him to place his hands on the wall, and handcuffing him. But the question on an excessive force claim isn't whether the plaintiff's motives were benign or his actions could reasonably be interpreted as nonthreatening. Rather, the question is whether the officer's conduct was reasonable at the time, without the benefit of hindsight. *See Graham*, 490 U.S. at 396. By this point it was reasonable for McLain to think that Helmueller was assaulting him, a serious crime and one obviously posing an immediate threat to McLain. Under *Graham*, McLain had the right to use force to defend himself and effectuate an arrest.

I conclude that the undisputed facts here show that this portion of McLain's actions were reasonable. But even if it was a closer call, he would be entitled to qualified immunity. Officers don't have to show that they used the least restrictive means in protecting themselves and others. Rather, courts "give considerable leeway to law enforcement officers' assessments regarding the degree of force appropriate in dangerous situations." *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015); *see also Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."); *Dockery v. Blackburn*, 911 F.3d 458, 468–69 (7th Cir. 2018) ("Even if the officers misconstrued [the

plaintiff's] actions or misjudged the amount of force needed to subdue him, qualified immunity protects officers from mistakes in judgment of this sort.").

Helmueller also contends that McLain was unnecessarily rough with him as he was on the ground, with McLain straddling or kneeling on him for part of the time, forcefully pulling his arms out from under him to handcuff him tightly, pushing his shoulder, and then pulling him up by his arms to a standing position even though he had told the officers that his shoulder was injured from a prior altercation with officers.

The parties dispute whether Helmueller was still resisting the officers by the time he was on the ground, and the video is not clear enough to confirm whether Helmueller resisted. At the summary judgment stage, I must assume that he did not resist. But that does not change the analysis. It was reasonable for McLain to consider Helmueller a threat even if he wasn't resisting at that moment, and therefore he could use some force to keep him subdued. Nothing in the video suggests that McLain specifically targeted Helmueller's injured shoulder with significant force or otherwise inflicted unnecessary pain on him. Instead, the officers reasonably kept Helmueller down for about a minute while applying handcuffs to him, then they rolled him onto his side to search him, with McLain no longer holding him down with his body. After about two and a half minutes on his side, they pulled him up by the arms while Helmueller pushed himself up with his legs. McLain immediately loosened Helmueller's handcuffs after checking them. Given the leeway courts must afford officers to respond to combative subjects like Helmueller, I conclude that McLain's actions were reasonable under the Fourth Amendment. And even if McLain had misjudged the amount of force needed to keep Helmueller subdued, he would be entitled to qualified immunity. Accordingly, I will grant McLain's motion for summary judgment.

**B. Defendants Yehlik and Hazen**

I granted Helmueller leave to proceed on excessive force claims against Yehlik and Hazen after he filed a complaint in a brand-new case (No. 22-cv-563-jdp) stating that Yehlik and Hazen had participated in tackling him. Dkt. 84. I closed the brand-new case and placed Helmueller's complaint in this case because there was no reason for him to have two separate cases about the same incident. *Id.* Because Helmueller filed his new complaint after defendant McLain had already filed his motion for summary judgment, I gave the parties a chance to file dispositive motions regarding the claims against Yehlik and Hazen. *Id.* Yehlik and Hazen followed with their own motion for summary judgment. Dkt. 93.

Before and after this second summary judgment motion, Helmueller filed documents stating that prison officials were interfering with his ability to litigate this and his several other cases in this court, including arguing that staff has failed to deliver to him Yehlik and Hazen's motion for summary judgment. *See* Dkt. 92; Dkt. 104; Dkt. 105. The court granted Helmueller more time to respond to the motion and directed the clerk of court to directly send Helmueller another copy of the summary judgment materials. But Helmueller did not submit opposition materials by the new deadline, other than a document titled "Brief in reply. Objections to defendants' motion for summary judgment" that crossed in the mail with the order extending Helmueller's opposition deadline. Dkt. 106.

Helmueller does not oppose the substance of defendants' excessive force arguments in that document. Instead, Helmueller states that he "object[s] to the . . . the motion for summary judgment in whole based upon the fact that Atty for the defendants in the matter seeks summary judgment and/or relief for persons whom are not the defendant in the matter of 21-cv-369." *Id.* Helmueller followed with a document titled "Legal Notice" stating "You are

10

out of line regarding the way you handled 21-cv-665, 22-cv-463, 22-cv-573, 22-cv-563 and how you handled you little combining and altering case # 21-cv-369. Caveat Nemo est supra Legas Mr. Peterson." Dkt. 108. I translate the Latin phrase as "Beware, no one is above the law."

Helmueller appears to object to my various rulings in the above cases. Some of those I dismissed for failing to state a claim. Others I dismissed for being redundant to other cases, including the '563 case against Yehlik and Hazen that I consolidated with this one. I dismissed the '665 case as a sanction against Helmueller for threatening opposing counsel or this court. Litigants often disagree with court rulings and there are avenues for them to litigate those disagreements, either by motions for reconsideration, post-judgment motions, or appeals. Helmueller's vague complaint about rulings in multiple cases is not a valid way to air those grievances. And his statement in Latin—while not overtly threatening—is entirely inappropriate. He should focus on the legal arguments in his specific cases instead of invective against opposing litigants or the court. I remind him that he potentially faces additional sanctions, including dismissal of his remaining cases, if he uses disrespectful language against or threatens counsel, this court, or any other person.

As it pertains to this particular case, Helmueller's filings indicate that he continues to object to my placement of his complaint against Yehlik and Hazen into this lawsuit. But that decision was sound and it has not prejudiced Helmueller.

Yehlik and Hazen point out another document showing that Helmueller has no substantive opposition to their argument that the excessive force claims against them should be dismissed. They submit Helmueller's reply to their answer—apparently sent only to defendants and not to the court. Dkt. 98-1. In it, Helmueller states that the court "butchered"

11

the allegations in his second complaint and that "I am alleging not that Yehlik and Hazen were the initiators of excessive force but rather that by taking part in an arrest which was effectuated unlawfully caused me to be wrongfully imprisoned . . . ." *Id.* at 4, 5 (I have edited some of the spelling in this quote).

Given my rulings on the excessive force claim against McLain and Helmueller's failure to substantively oppose the excessive force claims against Yehlik and Hazen, I will grant defendants' motion for summary judgment on the claims against Yehlik and Hazen. But if he really wishes to bring a wrongful arrest claim against Yehlik and Hazen, I will reiterate this court's previous rulings that Helmueller does not state a claim for wrongful arrest against any of the defendants. Dismissal of the criminal charges he received after the incident does not mean that he is innocent of those charges, as he suggests. As defendants point out, those charges were dismissed only after Helmueller received a decades-long sentence for reckless homicide in another case.

Nor does Helmueller otherwise state a constitutional claim regarding his arrest. Under the Fourth Amendment, an officer may arrest someone if there is probable cause to believe that the suspect has committed, is committing, or is about to commit an offense. *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012). The video footage shows that defendants had probable cause to arrest him for assaulting an officer. Helmueller also contends that officers violated his Fifth Amendment rights by continuing to question him after he asked to speak with a lawyer. But the Supreme Court recently held that a failure to comply with the requirements in *Miranda v. Arizona*, 384 U.S. 436 (1966), does not provide a basis for suing an officer for money damages. *See Vega v. Tekoh*, 142 S. Ct. 2095, 2099 (2022).

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for reconsideration of the court's previous ruling on his requests for admissions, Dkt. 82, is DENIED.

2. Defendants' motions for summary judgment, Dkt. 60 and Dkt. 93, are GRANTED.

3. The clerk of court is directed to enter judgment accordingly and close the case.

Entered March 30, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge